**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                  **CRIMINAL ACTION**

**VERSUS**                                   **No. 19-176**

**PABLO PEDRO MORALES-CURBELO**          **SECTION I**

### ORDER & REASONS

Before the Court is a motion[1] by defendant Pablo Pedro Morales-Curbelo ("defendant") to modify his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Specifically, defendant requests "compassionate release" on account of his various medical conditions and age.[2] In addition, defendant moves this Court to appoint counsel to represent him with respect to this motion pursuant to 18 U.S.C. § 3006A.[3] The government opposes the motion for compassionate release.[4] For the reasons set forth below, the Court denies both motions.

### I.     BACKGROUND

On December 4, 2019, defendant pleaded guilty in the instant matter to participating in a conspiracy to possess with the intent to distribute 500 grams or more of cocaine hydrochloride.[5] Prior to being sentenced, defendant was sentenced to 60 months of imprisonment in a separate matter before another section of this Court

---

[1] R. Doc. No. 66.
[2] *Id.* at 1.
[3] *Id.* at 8.
[4] R. Doc. No. 70.
[5] R. Doc. Nos. 18–19.

for violating the terms of his supervised release.[6] This Court then sentenced defendant to 60 months of imprisonment to be served consecutively to the 60 months of imprisonment that defendant was serving pursuant to his previously imposed sentence.[7]

On May 23, 2024, defendant filed motions[8] for compassionate release in both cases. Defendant's motion was denied as moot in the other case because, at the time he filed the motion, he had served nearly 59 months of his 60-month term of imprisonment imposed in that matter.[9] Defendant is currently serving the term of imprisonment imposed in this case, and his full term expiration date is June 25, 2029.[10]

At the time defendant filed the instant motion, he was 69 years of age.[11] He has since turned 70-years old.[12] In addition to his age, defendant asserts that he "suffers from a litany of medical concerns both currently and historically."[13] These concerns include acid reflux, glaucoma, edema in the lower legs, and ischemic heart disease.[14] Defendant asserts that he is blind in his right eye and only has half of his

---

[6] E.D. La. Case No. 03-364, R. Doc. No. 773.

[7] R. Doc. No. 62.

[8] R. Doc. No. 66; E.D. La. Case No. 03-364, R. Doc. No. 784.

[9] Case No. 03-364, R. Doc. No. 788.

[10] R. Doc. No. 70-2; Federal Bureau of Prisons, *Find an inmate*, https://www.bop.gov/inmateloc (last visited Sept. 6, 2024).

[11] R. Doc. No. 66, at 3.

[12] *See id.*

[13] *Id.*

[14] *Id.*

vision in his left eye.[15] He also requires a walker.[16] Most notably, defendant has had three heart attacks—most recently in 2022 while incarcerated.[17] To manage these conditions, defendant maintains 15 distinctive active prescriptions.[18] Despite the medications, he still complains of physical pain and complications.[19] To corroborate his medical conditions and history, defendant has appended his medical records.[20]

Defendant contends that the trajectory of his health is "only worsening."[21] He claims that he is experiencing a "serious deterioration" of his health from which "he will not recover" because of the "aging process."[22] The "totality" of his conditions "afflicts his ability to provide self care within the environment of a correctional facility."[23] Specifically, "his declining mobility and occasional labored breathing renders travelling across the facility for meals to be so rigorous that he foregoes meals on occasion."[24]

The government maintains defendant is exaggerating his medical conditions.[25] Appended to the government's opposition is a letter[26] written by the warden of the facility at which defendant is currently imprisoned. The letter describes defendant's

---

[15] *Id.*
[16] *Id.* at 4.
[17] *Id.* at 3–4.
[18] *Id.* at 4.
[19] *Id.*
[20] R. Doc. No. 66-4.
[21] R. Doc. No. 66, at 4.
[22] *Id.*
[23] *Id.* (internal quotations and citation omitted).
[24] *Id.*
[25] R. Doc. No. 70, at 2.
[26] R. Doc. No. 70-1.

medical history and addresses whether he is receiving adequate medical care at the current facility. The letter states that  defendant was initially seen by a doctor at his current facility within a month of his arrival.[27] At this initial encounter, defendant's medications and chronic conditions were addressed, medications were ordered or refilled, and consultations to outside specialists were written.[28] The doctor categorized defendant as care level two based on the Bureau of Prisons care level guidelines.[29] According to the guidelines, care-level-two inmates are "stable outpatients who require clinician evaluations monthly to every six months."[30] Further, the guidelines state that the medical conditions of such inmates can be managed through routine, regularly scheduled appointments with clinicians and enhanced medical resources such as consultations with specialist from time to time.[31]

The letter also addressed several of defendant's medical conditions in greater detail. In regard to his vision, the letter indicates that defendant was seen by an ophthalmologist in March 2024.[32] The ophthalmologist concluded that defendant required removal of a cataract in his left eye.[33] Eye drops were prescribed to reduce eye-pressure and to prevent further damage.[34] A subsequent appointment was also

---

[27] *Id.* at 1.
[28] *Id.*
[29] *Id.*
[30] *Id.* at 2.
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*

scheduled.[35] In regard to defendant's kidney function, the letter indicates that his kidney function has been tested at least three times since August 2022, and that each time his kidney function was within normal range.[36] In regard to his heart, the letter indicates that a stress test was completed in January 2024, which showed that defendant's heart has "recovered well" from his most recent heart attack in 2022.[37] The letter states that defendant is ambulatory but "use[s] a wheeled walker for assistance without difficulty."[38] The letter concludes that defendant is still categorized as care level 2 and does not meet the requirements to be transferred to a medical facility.[39]

## II.    STANDARD OF LAW

"[M]otions for compassionate release are inherently discretionary. *Ward v. United States*, 11 F.4th 354, 360 (5th Cir. 2021). The burden ultimately falls on the defendant to convince the court to exercise its discretion. *Id.* at 361. A defendant may bring a motion for compassionate release only after "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

---

[35] *Id.*
[36] *Id.* at 1.
[37] *Id.*
[38] *Id.*
[39] *Id.* at 2.

Once the exhaustion requirement is satisfied, the district court may grant compassionate release if it finds "extraordinary and compelling reasons" warranting such relief and "consider[s] the factors set forth in section 3553(a) to the extent that they are applicable." § 3582(c)(1)(A)(i). "[T]he district court may deny [a defendant's] motion without reaching the Section 3553(a) factors if it determines that he has not identified 'extraordinary and compelling reasons' justifying his release." *United States v. Jackson*, 27 F.4th 1088, 1093 n.8 (5th Cir. 2022). Similarly, a district court has the authority to deny compassionate release on the basis of the § 3553(a) factors alone. *See Ward*, 11 F.4th at 360 ("The district court has discretion to deny compassionate release if the Section 3553(a) factors counsel against a reduction"). The district court is obligated to consider the § 3553(a) factors even if the government does not raise them. *See id.* at 360–61. In addition, the grant of compassionate release must be "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A).

U.S. Sentencing Guidelines § 1B1.13 provides the applicable policy statement. *United States v. Bolton*, No. 09-166, 2024 WL 1966448, at *2 (E.D. La. May 3, 2024) (Africk, J.). Most relevant for present purposes, § 1B1.13 identifies both the medical circumstances and the age of the defendant as potentially extraordinary and compelling reasons. *See* U.S.S.G. § 1B1.13(b)(1)–(2). Qualifying medical circumstances include a medical condition which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13(b)(1)(B). Similarly, an

extraordinary and compelling medical reason exists when the defendant "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." § 1B1.13(b)(1)(C). The age of the defendant constitutes an extraordinary and compelling reason when the defendant "(A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.* § 1B1.13(b)(2).

As an applicable policy statement, § 1B1.13 is binding on this Court. As the Fifth Circuit has explained, Congress's directive that sentence reductions be "consistent with" applicable policy statements demonstrates that "it wished them to be binding in § 3582(c) proceedings." *United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011). Since a sentence reduction inconsistent with a policy statement would violate § 3582(c)'s directive, "policy statements must be binding." *Id.*; *accord United States v. Albers*, No. 22-3215, 2024 WL 1733958, at *2 (10th Cir. Feb. 9, 2024) (holding that the language of "consistent with" in § 3582(c)(2) signifies that applicable policy statements "are *binding on district courts* and limit their authority to grant motions for reduction of sentences" (emphasis in original) (quotations and citation omitted)). Prior to the recent amendments to § 1B1.13, which revised the policy statement to refer to motions brought also by defendants, § 1B1.13 did not bind district courts considering such motions because it "only applie[d] to motion[s] of the Director of the Bureau of Prisons" and was therefore an "inapplicable policy statement." *United*

*States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021) (internal quotations and citation omitted). Since § 1B1.13 now explicitly applies to motions brought by defendants, the Court is bound by it.

### III.   ANALYSIS

#### a.   Appointment of Counsel

Before addressing the merits of defendant's motion for compassionate release, the Court addresses the threshold issue of defendant's request for appointed counsel pursuant to 18 U.S.C. § 3006A. This statute requires counsel be appointed in an exhaustive set of circumstances, including when the defendant is constitutionally entitled to counsel. *See* 18 U.S.C. § 3006A(a)(1)(A)–(J). None of the non-constitutional enumerations pertain to motions for compassionate release. *See United States v. Joseph*, No. 15-307, 2020 WL 3128845, at *1 (E.D. La. June 12, 2020) (Vance, J.).

Nor does the Constitution entitle defendant to counsel in this proceeding. The Sixth Amendment's guarantee of assistance of counsel in all criminal prosecutions "extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Accordingly, with respect to the Sixth Amendment, "there is no constitutional right to counsel to aid in a defendant's request for compassionate release." *United States v. Hemmelgarn*, 15 F.4th 1027, 1032 (10th Cir. 2021).

Furthermore, the Court finds no reason to conclude that assistance of counsel is required as a matter of "fundamental fairness" guaranteed by the Due Process Clause of the Fifth Amendment. *Gagnon v. Scarpelli*, 411 U.S. 778, 790–91 (1973) (holding that appointment of counsel to represent a petitioner in habeas corpus

proceedings was required, in light of the particular circumstances of the case, as a matter of due process); *see also United States v. Robinson*, 542 F.3d 1045, 1051 (5th Cir. 2008) (recognizing that the Fifth Amendment's Due Process Clause is a "potential source of the right to counsel" in the analogous context of proceedings pursuant to § 3582(c)(2)). A relevant consideration in the due process analysis is whether a defendant is "capable of speaking effectively for himself." *Gagnon*, 411 U.S. at 791. By writing a nine-page motion with appropriate citations, defendant has sufficiently demonstrated this capability. His proceeding without counsel in this matter thus does not violate due process. *Cf. United States v. Whitebird*, 55 F.3d 1007, 1011 n.3 (5th Cir. 1995) (finding that due process did not require appointment of counsel in the analogous context of a proceeding under 18 U.S.C. § 3582(c)(2)).

Although § 3006A and, by reference, the Constitution do not entitle defendant to counsel, federal courts nonetheless have discretion to appoint counsel "in the interests of justice." *Robinson*, 542 F.3d at 1052; *see also* 18 U.S.C. § 3006A(c) (providing that, "at any stage of the proceedings," the court "may appoint counsel . . . as the interests of justice may dictate"). The Court finds that the interests of justice do not necessitate the appointment of counsel because defendant's "submissions do not reveal h[im] to be incapable of pursuing this matter pro se." *Joseph*, 2020 WL 3128845, at *2. Accordingly, defendant's motion for appointment of counsel is denied.

### b. Compassionate Release

The Court now turns to the merits of defendant's motion for compassionate release. In the first place, the Court finds that the exhaustion requirement of

§ 3582(c)(1)(A) does not preclude its consideration of defendant's motion. For his part, defendant asserts that the warden of his current facility received his request for compassionate release on November 15, 2023, and therefore the requisite 30 days elapsed pursuant to § 3582(c)(1)(A).[40] But defendant does not append any documentation to corroborate this assertion. However, since the government does not raise failure to exhaust, the Court will not dismiss the motion based on the same. *See Ward*, 11 F.4th at 361 ("Like other claim-processing rules, the Government must properly raise[] the rule before it will be enforced." (quotations and citation omitted) (alteration in original)).

Defendant raises both his medical circumstances and his age as extraordinary and compelling reasons. With respect to his medical circumstances, defendant specifically cites U.S. Sentencing Guidelines § 1B1.13(b)(1)(B), which provides that an extraordinary and compelling reason exists when the defendant suffers from a serious medical condition that "substantially diminishes" his ability to provide self-care while incarcerated.[41]

The Court finds that compassionate release would not be consistent with this provision of the sentencing guidelines, as required by 18 U.S.C. § 3582(c)(1)(A). Even if the Court were to credit defendant's motion in its entirety and put aside the warden's letter to the contrary, the Court questions whether his conditions "substantially diminish[]," U.S.S.G. § 1B1.13(b)(1)(B), his ability to provide self-care.

---

[40] R. Doc. No. 66, at 2.
[41] *Id.* at 4.

In his own words, defendant's conditions merely "afflict[]" his ability to provide self-care.[42] The impact of his medical conditions are substantially lesser in degree than what is required by the sentencing guidelines. For example, defendant claims that he foregoes meals "on occasion" because of his ambulatory difficulties.[43] But an occasional missed meal does not constitute a substantial diminution of defendant's ability to provide self-care. *Cf. United States v. Jenkins*, No. 96-358, 2021 WL 4691025, at *3 (D.S.C. Oct. 7, 2021) (finding an extraordinary and compelling reason when the defendant missed so many meals because of his medical conditions that he lost 16 pounds).

The Court also finds that defendant's medical circumstances do not constitute an extraordinary and compelling reason with respect to a related provision of the sentencing guidelines, which defendant does not explicitly cite but clearly addresses. U.S. Sentencing Guidelines § 1B1.13(b)(1)(C) provides that compassionate release is appropriate when a defendant requires specialized care that is not being provided. Defendant's motion evinces that he is being provided numerous medications for his ailments.[44] Further, the warden's letter attests that defendant has seen specialists and is scheduled to see specialists.[45] Defendant does not dispute that he has access to specialized care and medications. Accordingly, the Court is satisfied that defendant is being provided with sufficient medical care as to preclude compassionate release.

---

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] R. Doc. No. 70-1.

*Cf. United States v. Foots*, No. 07-0285, 2023 WL 185097, at *4 (N.D. Tex. Jan. 13, 2023) (denying a defendant's motion for compassionate release because "[h]is medical records indicate that he receives frequent medical attention, can consult medical professionals, and has access to adequate care and medications when needed").

With respect to the defendant's age, the Court concludes that it does not provide a basis for compassionate release consistent with the sentencing guidelines. U.S. Sentencing Guidelines § 1B1.13(b)(2) sets out three required conditions pursuant to which the defendant's age may warrant compassionate release. Defendant plainly fails condition (C), which requires a defendant to have served "at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13(b)(2). Defendant has so far served less than five months of the 60-month term imposed by this Court. Accordingly, he has served neither ten years nor 75% of his term in this matter. Since the Court finds that defendant fails condition (C), it declines to address the other requirements.

Although the Court has concluded that compassionate release is not warranted by an extraordinary and compelling reason, the Court also concludes that compassionate release would be inappropriate pursuant to the § 3553(a) factors. The Court finds that "the need for the sentence . . . to provide just punishment for the offense," § 3553(a)(2)(A), would be disserved by granting defendant compassionate release when he has served a meager fraction of his sentence. In addition, the Court finds that compassionate release would neither "afford adequate deterrence to criminal conduct" nor "protect the public from further crimes of the defendant." §

3553(a)(2)(B)–(C). Defendant has an extensive criminal history, including possession and distribution of marijuana, battery, simple possession of cocaine, driving under the influence, operating while intoxicated, simple assault, and multiple counts of a federal drug-trafficking crimes.[46] After defendant finished his term of imprisonment in connection with his federal drug trafficking crimes, defendant was placed on supervised release, which was subsequently revoked.[47]

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that defendant's motion for appointment of counsel is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's motion to modify his term of imprisonment is **DENIED**.

New Orleans, Louisiana, September 18, 2024.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[46] R. Doc. No. 28, at 7–11.
[47] E.D. La. Case No. 03-364, R. Doc. No. 773. The Court also notes from the 821 Committee screening forms that defendant has committed several disciplinary infractions while incarcerated.